1   Lawrence J. Gornick (SBN 136290)
    Debra DeCarli (SBN 237642)
2   Laura Brandenberg (SBN 238642)
    **LEVIN SIMES KAISER & GORNICK LLP**
3   44 Montgomery Street, 36th Floor
    San Francisco, CA 94104
4   Telephone: (415) 646-7160
    Fax: (415) 981-1270
5   lgornick@lskg-law.com
    ddecarli@lskg-law.com
6   lbrandenberg@lskg-law.com
    Attorneys for Plaintiffs
7

**E-filing**

ORIGINAL FILED

JUN 5 2008

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

8           UNITED STATES DISTRICT COURT, NORTHERN DISTRICT OF CALIFORNIA

9                          SAN FRANCISCO DIVISION

10  RONALD SPRINGS and ADRIANE          Case No:
    SPRINGS,
11                                      CV 08    2823    SI
               Plaintiffs,
12
          vs.
13                                      ORIGINAL COMPLAINT
    BAYER HEALTHCARE
14  PHARMACEUTICALS, INC.; BAYER        DEMAND FOR JURY TRIAL
    HEALTHCARE LLC; BAYER SCHERING
15  PHARMA AG; GENERAL ELECTRIC
    COMPANY; GE HEALTHCARE, INC.; GE
16  HEALTHCARE AS; COVIDIEN, INC.;
    MALLINCKRODT, INC.; and BRACCO
17  DIAGNOSTICS, INC.

18             Defendants.

19

20          Plaintiffs, Ronald Springs and Adriane Springs, (hereinafter "Plaintiffs") allege as follows:

21                          **NATURE OF THE CASE**

22          1.      Plaintiff Ronald Springs ("Mr. Springs" or "Plaintiff") has nephrogenic systemic

23  fibrosis ("NSF"). NSF is an incurable, painful, and deadly disease. Mr. Springs contracted NSF as a

24  result of receiving intravenous injections of gadolinium-based contrast agents manufactured by the

25  Defendants. Gadolinium-based contrast agents are not safe for use in individuals such as Plaintiff who

26  have impaired kidney function. Defendants represented that the gadolinium-based contrast agents

27  were safe and failed to warn of the risks associated with gadolinium-based contrast agents.

28

- 1 -
COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

## JURISDICTION AND VENUE

2.      This Court has jurisdiction pursuant to 28 USC § 1332.  Plaintiffs are citizens of a state that is different from the states where Defendants are incorporated and have their respective principal places of business.  The amount in controversy for this case exceeds $75,000.  Venue pursuant to 28 USC § 1391(c) is proper because Defendants have sufficient contacts within the City and County of San Francisco, California to subject each of them to personal jurisdiction.

## INTRADISTRICT ASSIGNMENT

3.      On information and belief, a substantial part of the events or omissions which give rise to the claim occurred in the County and City of San Francisco.

## PARTIES

*Plaintiffs*

4.      Ronald Springs and his wife Adriane Springs are residents of the State of Texas.

*Defendants*

5.      Defendants Bayer Schering Pharma AG, Bayer HealthCare Pharmaceuticals, Inc. and Bayer Healthcare LLC (collectively referred to as "Bayer") manufacture, market and sell Magnevist, a gadolinium-based contrast agent that, on information and belief, was injected into Plaintiff.

6.      Defendant Bayer HealthCare LLC, a division of Bayer AG, is a Delaware business entity with its principal place of business in New York.

7.      Bayer HealthCare LLC is duly authorized to conduct business in the State of California and does business in San Francisco County.

8.      Bayer Schering Pharma AG is a foreign company domiciled in Germany.  Bayer Schering Pharma AG is engaged in the business of designing, licensing, manufacturing, distributing, selling, marketing and/or introducing Magnevist into interstate commerce, either directly or indirectly through third parties or related entities.

9.      Defendant Bayer HealthCare Pharmaceuticals, Inc. is a Delaware business entity with its principal place of business in New Jersey.  Defendant Bayer HealthCare Pharmaceuticals, Inc. is the U.S.-based pharmaceuticals unit of Bayer Healthcare LLC.

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

1    10.    Bayer HealthCare Pharmaceuticals, Inc. is duly authorized to conduct business in the
2  State of California and does business in San Francisco County.
3    11.    At all times relevant to this complaint, Bayer advertised, promoted, marketed,
4  distributed and sold Magnevist in San Francisco County.
5    12.    Defendants General Electric Company, GE Healthcare, Inc. and GE Healthcare AS
6  (collectively referred to as "GE") manufacture and sell Omniscan, a gadolinium-based contrast agent
7  that, on information and belief, was injected into Plaintiff.
8    13.    Defendant General Electric Company is a New York business entity with its principal
9  place of business in Connecticut.
10    14.    General Electric Company is duly authorized to conduct business in the State of
11  California and does business in San Francisco County.
12    15.    Defendant GE Healthcare, Inc. is a Delaware corporation with its principal place of
13  business in New Jersey.
14    16.    GE Healthcare, Inc. is duly authorized to conduct business in the State of California and
15  does business in San Francisco County.
16    17.    GE Healthcare AS is a foreign company domiciled in Norway.  GE Healthcare AS is
17  engaged in the business of designing, licensing, manufacturing, distributing, selling, marketing and/or
18  introducing Omniscan into interstate commerce, either directly or indirectly through third parties or
19  related entities.
20    18.    At all times relevant to this complaint, GE advertised, promoted, marketed, distributed
21  and sold Omniscan and its MRI and MRA machines in San Francisco County.
22    19.    Defendant Mallinckrodt, Inc. manufactures, markets, and sells OptiMARK, a
23  gadolinium-based contrast agent that, on information and belief, was injected into Plaintiff.
24    20.    Defendant Mallinckrodt, Inc. is a Delaware corporation with its principal place of
25  business in Missouri.
26    21.    At all times relevant to this complaint, Mallinckrodt was in the business of designing,
27  licensing, manufacturing, distributing, selling, marketing, promoting, and introducing OptiMARK into
28  interstate commerce.

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

22.    Defendant Bracco Diagnostics, Inc. ("Bracco") manufactures, markets, and sells MultiHance and ProHance, gadolinium-based contrast agents that, on information and belief, were injected into Plaintiff.

23.    Bracco Diagnostics, Inc. is a Delaware corporation with its principal place of business in New Jersey.

24.    At all times relevant to this complaint, Bracco was in the business of designing, licensing, manufacturing, distributing, selling, marketing, promoting, and introducing MultiHance and ProHance into interstate commerce.

25.    The Bayer, GE, Mallinckrodt, and Bracco Defendants are collectively referred to as Defendants.

## FACTS

26.    Mr. Springs was diagnosed with NSF in or around August 2005.

27.    NSF is predominantly characterized by discoloration, thickening, tightening, and swelling of the skin after receiving a gadolinium-based contrast agent injection. These fibrotic and edematous changes produce muscular weakness and inhibit flexion and extension of joints, resulting in contractures. NSF often progresses to painful inhibition of the ability to use the arms, legs, hands, feet, and other joints. The skin changes that begin as darkened patches or plaques progress to a "woody" texture and are accompanied by burning, itching, or severe pain in the areas of involvement. NSF also progresses to a fibrotic or scarring condition of other body organs such as the lungs, heart, liver, and musculature, and that can inhibit their ability to function properly and may lead to death. NSF is a progressive disease for which there is no known cure.

28.    NSF is a man-made disease. It only occurs in patients who have received a gadolinium-based contrast agent.

29.    Gadolinium is a highly toxic heavy metal. It does not occur naturally in the human body. The only known route for gadolinium to enter the human body is injection of a gadolinium-based contrast agent.

30.    Because gadolinium is toxic, it has to be coated to keep it from coming in contact with human tissue when injected. This coating process is called chelation.

- 4 -

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

1   31. Gadolinium is eliminated from the body by the kidneys. Gadolinium-based contrast

2 agents are not safe if the chelate separates from the gadolinium, which is what happens over time if

3 kidneys are not functioning properly. Individuals with impaired kidney function risk dechelation, and

4 cannot efficiently or quickly eliminate gadolinium from their bodies. Defendants never tested the

5 safety of their gadolinium-based contrast agents in individuals with kidney impairment.

6   32. On information and belief, the gadolinium-based contrast agents injected into Plaintiff

7 were manufactured by Defendants.

8   33. In pre-clinical studies during which gadolinium-based contrast agents were injected into

9 laboratory animals, consistent patterns of toxicity including nephrogenic fibrotic changes in the

10 kidneys and other body organs occurred.

11   34. During the years that Defendants have manufactured, marketed, distributed, sold, and

12 administered gadolinium-based contrast agents, there have been numerous case reports, studies,

13 assessments, papers, and other clinical data that have described and/or demonstrated NSF in

14 connection with the use of gadolinium-based contrast agents.

15   35. Plaintiff received MRIs and/or MRAs utilizing gadolinium-based contrast agents.

16   36. Plaintiff had impaired kidney function at the time he received his first injection of

17 gadolinium-based contrast agent and continued to have impaired kidney function at the time he

18 received each subsequent injection of gadolinium-based contrast agent.

19   37. During the time period when Plaintiff received injections of Defendants' gadolinium-

20 based contrast agents, Defendants knew or should have known that the use of gadolinium-based

21 contrast agents created a risk of serious bodily injury and death in patients with impaired kidney

22 function.

23   38. Defendants failed to warn Plaintiff and his healthcare providers about the serious health

24 risks associated with gadolinium-based contrast agents, and failed to disclose the fact that there were

25 safer alternatives.

26   39. As a direct and proximate result of receiving injections of gadolinium-based contrast

27 agents manufactured, marketed, distributed, and sold by Defendants, Plaintiff developed NSF.

28   40. Defendants have repeatedly and consistently failed to advise consumers and/or their

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

1   healthcare providers of the causal relationship between gadolinium-based contrast agents and NSF in

2   patients with kidney impairment.  Defendants knew or should have known of the risk of NSF posed by

3   gadolinium-based contrast agents to individuals with impaired kidney function years before they

4   finally issued warnings.

5         41.     It was not until September 2007 that Bayer, GE, Bracco, and Mallinckrodt finally sent

6   letters to healthcare providers warning them of the risk of NSF to kidney impaired individuals who

7   received MRIs using gadolinium-based contrast agents.

8         42.     Had Plaintiff and/or his healthcare providers been warned about the risks associated

9   with gadolinium-based contrast agents, he would not have been administered gadolinium-based

10  contrast agents and would not have been afflicted with NSF.

11        43.     As a direct and proximate result of Plaintiff being administered gadolinium-based

12  contrast agents, he has suffered severe physical injury and pain and suffering, including, but not

13  limited to, the effects of NSF.  Plaintiff's physical injuries and pain and suffering will inevitably

14  worsen over time and will in all likelihood lead to death.

15        44.     As a direct and proximate result of being administered gadolinium-based contrast

16  agents, Plaintiffs suffered and continue to suffer significant mental anguish and emotional distress and

17  will continue to suffer significant mental anguish and emotional distress in the future.

18        45.     As a direct and proximate result of being administered gadolinium-based contrast

19  agents, Plaintiffs have also incurred medical expenses and other economic damages and will continue

20  to incur such expenses in the future.

21                    **DISCOVERY RULE & FRAUDULENT CONCEALMENT**

22        46.     The discovery rule should be applied to toll the running of the statute of limitations

23  until Plaintiffs knew or through the exercise of reasonable care and diligence should have known of

24  the existence of their claims against all Defendants.  The nature of Plaintiffs' injuries and damages,

25  and their relationship to gadolinium-based contrast agents used in conjunction with MRIs and MRAs,

26  was not discovered, and through reasonable care and due diligence could not have been discovered, by

27  Plaintiffs, until a time less than two years before the filing of this Complaint.  It was not until

28

1  September 2007 that Bayer, GE, Bracco, and Mallinckrodt finally sent letters to healthcare providers

2  warning them of the risk of NSF to kidney impaired individuals who received MRIs using gadolinium-

3  based contrast agents.  Therefore, under appropriate application of the discovery rule, Plaintiffs' suit

4  was filed well within the applicable statutory limitations period.

5          47.     Defendants are estopped from asserting a statute of limitations defense because all

6  Defendants fraudulently concealed from Plaintiffs the nature of Plaintiffs' injury and the connection

7  between the injury and all Defendants' tortious conduct.

8                          **FIRST CAUSE OF ACTION**
                          **STRICT LIABILITY: FAILURE TO WARN**
9

10         48.     Plaintiffs incorporate by reference and reallege each paragraph set forth above.

11         49.     Defendants' gadolinium-based contrast agents, and MRI and MRA machines designed

12 to be used in conjunction with gadolinium-based contrast agents, were defective due to inadequate

13 warnings or instruction for use, both prior to marketing and post-marketing.  Defendants knew or

14 should have known that their products created significant risks of serious bodily harm and death to

15 consumers.  Defendants failed to adequately warn consumers and their healthcare providers of such

16 risks.

17         50.     Because of Defendants' failure to provide adequate warnings with their products,

18 Plaintiff was injected with gadolinium-based contrast agents that the Defendants manufactured,

19 designed, sold, supplied, marketed or otherwise introduced into the stream of commerce.  Those

20 gadolinium-based contrast agents are the legal cause of Plaintiff's physical injuries, harm, damages,

21 and economic loss.  Plaintiffs will continue to suffer such harm, damages, and economic loss in the

22 future.

23                         **SECOND CAUSE OF ACTION**
                          **STRICT LIABILITY:  DESIGN DEFECT**
24

25         51.     Plaintiffs incorporate by reference and reallege each paragraph set forth above.

26         52.     Defendants are the manufacturers, designers, distributors, sellers, or suppliers of

27 gadolinium-based contrast agents, and MRI and MRA machines designed to be used in conjunction

28

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

1 with gadolinium-based contrast agents.

2    53.   The gadolinium-based contrast agents manufactured and supplied by Defendants were

3 defective in design or formulation in that, when they left the hands of the Defendants, the foreseeable

4 risks of the products exceeded the benefits associated with their design or formulation, or were more

5 dangerous than an ordinary consumer would expect.

6    54.   The foreseeable risks associated with the design or formulation of gadolinium-based

7 contrast agents, and MRI and MRA machines designed to be used in conjunction with gadolinium-

8 based contrast agents, include, but are not limited to, the fact that the design or formulation of

9 gadolinium-based contrast agents are more dangerous than a reasonably prudent consumer would

10 expect when used in an intended or reasonably foreseeable manner.

11    55.   As a direct and proximate result of Plaintiff being administered gadolinium-based

12 contrast agents as manufactured, designed, sold, supplied, marketed, and introduced into the stream of

13 commerce by Defendants, Plaintiff has suffered physical injury, harm, damages, and economic loss

14 and will continue to suffer such harm, damages, and economic loss in the future.

**THIRD CAUSE OF ACTION**
**STRICT LIABILITY: FAILURE TO ADEQUATELY TEST**

17    56.   Plaintiffs incorporate by reference and reallege each paragraph set forth above.

18    57.   Defendants advised consumers and the medical community that gadolinium-based

19 contrast agents were safe for use. Defendants failed to adequately test gadolinium-based contrast

20 agents with respect to their use by consumers with kidney impairment.

21    58.   Had Defendants adequately tested the safety of gadolinium-based contrast agents for

22 use by consumers with kidney impairment and disclosed those results to the medical community or the

23 public, Plaintiff would not have been administered gadolinium-based contrast agents.

24    59.   As a direct and proximate result of Defendants' failure to adequately test the safety of

25 gadolinium-based contrast agents and as a direct and proximate result of Plaintiff being administered

26 gadolinium-based contrast agents as manufactured, designed, sold, supplied, marketed, and introduced

27 into the stream of commerce by Defendants, Plaintiff has suffered physical injury, harm, damages, and

28

1   economic loss and will continue to suffer such harm, damages, and economic loss in the future.

2                          **FOURTH CAUSE OF ACTION**
3                                **NEGLIGENCE**

4        60.    Plaintiffs incorporate by reference and reallege each paragraph set forth above.

5        61.    Defendants had a duty to exercise reasonable care in the design, formulation, testing,

6   manufacture, labeling, marketing, sale and/or distribution of gadolinium-based contrast agents and the

7   MRI and MRA machines designed to be used in conjunction with gadolinium-based contrast agents.

8   In particular, they had a duty to assure that their products did not pose an unreasonable risk of bodily

9   harm and adverse events.

10       62.    Defendants failed to exercise reasonable care in the design, formulation, manufacture,

11  sale, testing, marketing, or distribution of gadolinium-based contrast agents and the MRI and MRA

12  machines designed to be used in conjunction with gadolinium-based contrast agents in that they knew

13  or should have known that the products could cause significant bodily harm or death and were not safe

14  for use by certain types of consumers.

15       63.    Defendants failed to exercise ordinary care in the labeling of gadolinium-based contrast

16  agents and the labeling of MRI and MRA machines designed to be used in conjunction with

17  gadolinium-based contrast agents and failed to issue to consumers and their health care providers

18  adequate warnings concerning the risks of serious bodily injury or death due to the use of gadolinium-

19  based contrast agents and the MRI and MRA machines designed to be used in conjunction with

20  gadolinium-based contrast agents.

21       64.    Despite the fact that Defendants knew or should have known that gadolinium-based

22  contrast agents and the MRI and MRA machines designed to be used in conjunction with gadolinium-

23  based contrast agents posed a serious risk of bodily harm to consumers, Defendants unreasonably

24  continued to manufacture and market gadolinium-based contrast agents and the MRI and MRA

25  machines designed to be used in conjunction with gadolinium-based contrast agents for administration

26  to MRI and MRA patients with kidney impairment and failed to exercise reasonable care with respect

27  to post-sale warnings and instructions for safe use.

28       65.    At all relevant times, it was foreseeable to Defendants that consumers like Plaintiff

- 9 -

1    would suffer injury as a result of their failure to exercise ordinary care as described above.

2        66.    As a direct and proximate result of Defendants' negligence, Plaintiff has suffered

3    physical injuries, harm, damages, and economic loss and will continue to suffer such harm, damages

4    and economic loss in the future.

5        67.    The foregoing acts, conduct and omissions of Defendants were vile, base, willful,

6    malicious, wanton, oppressive, and fraudulent, and were done with a conscious disregard for the

7    health, safety, and rights of Plaintiffs and other users of Defendants' products, and for the primary

8    purpose of increasing Defendants' profits.  As such, Plaintiffs are entitled to exemplary damages.

9
                            **FIFTH CAUSE OF ACTION**
                        **NEGLIGENT MISREPRESENTATION**
10

11       68.    Plaintiffs incorporate by reference and reallege each paragraph set forth above.

12       69.    Defendants supplied the public and Plaintiff's healthcare providers with materially false

13   and incomplete information with respect to the safety of their gadolinium-based contrast agents.

14       70.    The false information supplied by Defendants was that gadolinium-based contrast

15   agents were safe.

16       71.    In supplying this false information, Defendants failed to exercise reasonable care.

17       72.    The false information communicated by Defendants to Plaintiff and his healthcare

18   providers was material and Plaintiff justifiably relied in good faith on the information to his detriment.

19       73.    As a direct and proximate result of Defendants' misrepresentations, Plaintiff was

20   administered gadolinium-based contrast agents and has suffered physical injury, harm, damages, and

21   economic loss and will continue to suffer such harm, damages, and economic loss in the future.

22
                            **SIXTH CAUSE OF ACTION**
                                    **FRAUD**
23

24       74.    Plaintiffs incorporate by reference and reallege each paragraph set forth above.

25       75.    Defendants knowingly and intentionally made materially false and misleading

26   representations to Plaintiff's healthcare providers and to the public, to the effect that gadolinium-based

27   contrast agents were safe for use and that their labeling, marketing, and promotional materials fully

28   described all known risks associated with their product.

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

76.     Defendants' representations were in fact false. Gadolinium-based contrast agents are not safe for use and Defendants' labeling, marketing, and promotional materials did not fully describe all known risks of the products.

77.     Defendants had actual knowledge that gadolinium-based contrast agents created an unreasonable risk of serious bodily injury and death to consumers, especially patients with kidney impairment.

78.     Defendants knowingly and intentionally omitted this information from their labeling, marketing, and promotional materials and instead, labeled, promoted, and marketed their products as safe for use in order to increase and sustain sales.

79.     When Defendants made representations that gadolinium-based contrast agents were safe for use, they knowingly and intentionally concealed and withheld from Plaintiff, his healthcare providers, and the public, the fact that their gadolinium-based contrast agents are not safe for use in consumers with kidney impairment.

80.     Defendants had a duty to disclose that gadolinium-based contrast agents are not safe for use in patients with kidney impairment. Defendants had superior knowledge of these facts that were material to Plaintiff and his healthcare providers' decisions to use gadolinium-based contrast agents.

81.     Plaintiff and his healthcare providers reasonably and justifiably relied on the Defendants' representations that gadolinium-based contrast agents were safe for human use and that Defendants' labeling, marketing, and promotional materials fully described all known risks associated with the products.

82.     Plaintiff did not know and could not have learned of the facts that the Defendants omitted and suppressed. The facts suppressed and concealed by the Defendants are material. Had Plaintiff and his healthcare providers known that gadolinium-based contrast agents are not safe for use in patients with renal insufficiency, Plaintiff would not have been injected with gadolinium-based contrast agents.

83.     As a direct and proximate result of Defendants' misrepresentations and concealment, Plaintiff was administered gadolinium-based contrast agents and has suffered physical injury, harm, damages and economic loss and will continue to suffer such harm, damages, and economic loss in the

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

1  future.

2      84.    The foregoing acts, conduct, and omissions of Defendants were vile, base, willful,

3  malicious, wanton, oppressive, and fraudulent, and were done with a conscious disregard for the

4  health, safety, and rights of Plaintiff and other users of Defendants' products, and for the primary

5  purpose of increasing Defendants' profits.  As such Plaintiffs are entitled to exemplary damages.

6                          **SEVENTH CAUSE OF ACTION**
                    **FRAUD: CONCEALMENT, SUPPRESSION OR**
7                      **OMISSION OF MATERIAL FACTS**

8
9      85.    Plaintiffs incorporate by reference and reallege each paragraph set forth above.

10     86.    Defendants omitted, suppressed, or concealed material facts concerning the dangers and

11 risk associated with the use of their gadolinium-based contrast agents, including but not limited to the

12 risks to patients with kidney impairment of developing NSF, and the fact that safer alternatives were

13 available.  Further, Defendants purposely downplayed and understated the serious nature of the risks

14 associated with use of their gadolinium-based contrast agents in order to increase and sustain sales.

15     87.    As a direct and proximate result of Defendants' concealment of material facts, Plaintiff

16 was administered gadolinium-based contrast agents and has suffered physical injury, harm, damages,

17 and economic loss and will continue to suffer such harm, damages, and economic loss in the future.

18     88.    The foregoing acts, conduct, and omissions of Defendants were vile, base, willful,

19 malicious, wanton, oppressive, and fraudulent, and were done with a conscious disregard for the

20 health, safety, and rights of Plaintiff and other users of Defendants' products, and for the primary

21 purpose of increasing Defendants' profits.  As such Plaintiffs are entitled to exemplary damages.

22                          **EIGHTH CAUSE OF ACTION**
                        **BREACH OF EXPRESS WARRANTY**
23
24     89.    Plaintiffs incorporate by reference and reallege each paragraph set forth above.

25     90.    Defendants expressly warranted that gadolinium-based contrast agents were safe and
   effective.
26
27     91.    The gadolinium-based contrast agents manufactured and sold by Defendants did not

28 conform to these express representations because they cause serious injury to consumers when

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

administered in recommended dosages.

92.    As a direct and proximate result of Defendants' breach of warranty, Plaintiff has suffered physical injury, harm, damages, and economic loss and will continue to suffer such harm, damages, and economic loss in the future.

## NINTH CAUSE OF ACTION
## BREACH OF IMPLIED WARRANTY

93.    Plaintiffs incorporate by reference and reallege each paragraph set forth above.

94.    At the time Defendants designed, manufactured, marketed, sold, and distributed gadolinium-based contrast agents, Defendants knew of the use for which gadolinium-based contrast agents was intended and impliedly warranted the product to be of merchantable quality and safe for such use.

95.    Plaintiff reasonably relied upon the skill and judgment of Defendants as to whether gadolinium-based contrast agents were of merchantable quality and safe for their intended use and upon Defendants' implied warranty as to such matters.

96.    Contrary to such implied warranty, gadolinium-based contrast agents were not of merchantable quality or safe for their intended use because the product was unreasonably dangerous as described above.

97.    As a direct and proximate result of Defendants' breach of warranty, Plaintiff has suffered physical injury, harm, damages, and economic loss and will continue to suffer such harm, damages, and economic loss in the future.

## TENTH CAUSE OF ACTION
## VIOLATION OF TEXAS DECEPTIVE TRADE PRACTICES ACT

98.    Plaintiffs incorporate by reference and reallege each paragraph set forth above.

99.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Tex. Bus. & Com. Code Ann. §§ 17.41 *et seq.* including but not limited to the following:

   a.    Marketing, promoting or selling Magnevist, Omniscan, OptiMark, MultiHance, or ProHance for use with MRAs and other off-label uses by impliedly representing that such products are

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

1  approved for use with MRAs and other off-label uses, when in fact there is no such approval;

2          b.  Representing that gadolinium-based contrast agents are safe and effective for all

3  patients, including patients with kidney impairment, when in fact they are not;

4          c.  Representing that MRIs and MRAs using gadolinium-based contrast agents are safer or

5  more effective than other imaging methods that do not require the use of gadolinium-based contrast

6  agents when in fact they are not;

7          d.  Marketing, promoting, or selling their products as safer or superior to other brands of

8  gadolinium-based contrast agents;

9          e.  Marketing, promoting or selling Magnevist, Omniscan, OptiMark, MultiHance, or

10  ProHance as inert or with words to that effect;

11         f.  Marketing, promoting or selling Magnevist, Omniscan, OptiMark, MultiHance, or

12  ProHance for use with MRAs or other off-label uses by expressly or impliedly representing that they

13  are safe for such use; and

14         g.  Remaining silent despite their knowledge of the growing body of evidence regarding

15  the danger of NSF and doing so because the prospect of huge profits outweighed health and safety

16  issues.

17         100.  As a direct and proximate result of Defendants' unfair methods of competition and

18  unfair or deceptive actions or practices, Plaintiff was administered gadolinium-based contrast agents

19  and has suffered serious physician injury, harm, damages, and economic loss and will continue to

20  suffer such harm, damages, and economic loss in the future.

21                      **ELEVENTH CAUSE OF ACTION**
                        **LOSS OF CONSORTIUM**
22

23         101.  Plaintiff Adriane Springs ("Mrs. Springs") incorporates by reference and realleges each

24  paragraph set forth above.

25         102.  Adriane Springs is the wife of Ronald Springs.

26         103.  As a direct and proximate result of Defendants conducts, Mrs. Springs has been

27  deprived of her husband's love, society, companionship, and services and has otherwise suffered loss,

28  the extent of which will be more fully adduced at the trial of this matter.

- 14 -
COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

WHEREFORE, Plaintiffs pray for relief as follows:

1. Compensatory damages in excess of the jurisdictional amount, including, but not limited to pain, suffering, emotional distress, loss of enjoyment of life, loss of consortium, and other non-economic damages in an amount to be determined at trial of this action;

2. Past and future medical expenses, income, and other economic damages in an amount to be determined at trial of this action;

3. Punitive damages in an amount to be determined at trial of this action;

4. Pre- and post-judgment interest;

5. Attorneys' fees, expenses, and costs; and

6. Such further relief as this Court deems necessary, just, and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury.


Respectfully submitted this 5th day of June 2008.


LEVIN SIMES KAISER & GORNICK LLP

By:
Lawrence J. Gornick, Esq.

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

JS 44 (Rev. 12/07) (cand rev 1-16-08)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON PAGE TWO OF THE FORM.)

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Ronald Springs and Adriane Springs | See attached |

**(b)** County of Residence of First Listed Plaintiff  Collin County
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Lawrence J. Gornick, Esq., Levin Simes Kaiser & Gornick, 44
Montgomery Street, 36th Floor, San Francisco, CA 94104
(415) 646-7160

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- [ ] 1  U.S. Government Plaintiff
- [ ] 2  U.S. Government Defendant
- [ ] 3  Federal Question (U.S. Government Not a Party)
- [X] 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated or Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [X] 2 | [ ] 2 | Incorporated and Principal Place of Business In Another State | [ ] 5 | [X] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [ ] 110 Insurance<br>[ ] 120 Marine<br>[ ] 130 Miller Act<br>[ ] 140 Negotiable Instrument<br>[ ] 150 Recovery of Overpayment & Enforcement of Judgment<br>[ ] 151 Medicare Act<br>[ ] 152 Recovery of Defaulted Student Loans (Excl. Veterans)<br>[ ] 153 Recovery of Overpayment of Veteran's Benefits<br>[ ] 160 Stockholders' Suits<br>[ ] 190 Other Contract<br>[ ] 195 Contract Product Liability<br>[ ] 196 Franchise | **PERSONAL INJURY**<br>[ ] 310 Airplane<br>[ ] 315 Airplane Product Liability<br>[ ] 320 Assault, Libel & Slander<br>[ ] 330 Federal Employers' Liability<br>[ ] 340 Marine<br>[ ] 345 Marine Product Liability<br>[ ] 350 Motor Vehicle<br>[ ] 355 Motor Vehicle Product Liability<br>[ ] 360 Other Personal Injury | **PERSONAL INJURY**<br>[ ] 362 Personal Injury— Med. Malpractice<br>[X] 365 Personal Injury— Product Liability<br>[ ] 368 Asbestos Personal Injury Product Liability<br>**PERSONAL PROPERTY**<br>[ ] 370 Other Fraud<br>[ ] 371 Truth in Lending<br>[ ] 380 Other Personal Property Damage<br>[ ] 385 Property Damage Product Liability | [ ] 610 Agriculture<br>[ ] 620 Other Food & Drug<br>[ ] 625 Drug Related Seizure of Property 21 USC 881<br>[ ] 630 Liquor Laws<br>[ ] 640 R.R. & Truck<br>[ ] 650 Airline Regs.<br>[ ] 660 Occupational Safety/Health<br>[ ] 690 Other | [ ] 422 Appeal 28 USC 158<br>[ ] 423 Withdrawal 28 USC 157<br><br>**PROPERTY RIGHTS**<br>[ ] 820 Copyrights<br>[ ] 830 Patent<br>[ ] 840 Trademark | [ ] 400 State Reapportionment<br>[ ] 410 Antitrust<br>[ ] 430 Banks and Banking<br>[ ] 450 Commerce<br>[ ] 460 Deportation<br>[ ] 470 Racketeer Influenced and Corrupt Organizations<br>[ ] 480 Consumer Credit<br>[ ] 490 Cable/Sat TV<br>[ ] 810 Selective Service<br>[ ] 850 Securities/Commodities/ Exchange<br>[ ] 875 Customer Challenge 12 USC 3410<br>[ ] 890 Other Statutory Actions<br>[ ] 891 Agricultural Acts<br>[ ] 892 Economic Stabilization Act<br>[ ] 893 Environmental Matters<br>[ ] 894 Energy Allocation Act<br>[ ] 895 Freedom of Information Act<br>[ ] 900 Appeal of Fee Determination Under Equal Access to Justice<br>[ ] 950 Constitutionality of State Statutes |
| **REAL PROPERTY**<br>[ ] 210 Land Condemnation<br>[ ] 220 Foreclosure<br>[ ] 230 Rent Lease & Ejectment<br>[ ] 240 Torts to Land<br>[ ] 245 Tort Product Liability<br>[ ] 290 All Other Real Property | **CIVIL RIGHTS**<br>[ ] 441 Voting<br>[ ] 442 Employment<br>[ ] 443 Housing/ Accommodations<br>[ ] 444 Welfare<br>[ ] 445 Amer. w/Disabilities - Employment<br>[ ] 446 Amer. w/Disabilities - Other<br>[ ] 440 Other Civil Rights | **PRISONER PETITIONS**<br>[ ] 510 Motions to Vacate Sentence<br>**Habeas Corpus:**<br>[ ] 530 General<br>[ ] 535 Death Penalty<br>[ ] 540 Mandamus & Other<br>[ ] 550 Civil Rights<br>[ ] 555 Prison Condition | **LABOR**<br>[ ] 710 Fair Labor Standards Act<br>[ ] 720 Labor/Mgmt. Relations<br>[ ] 730 Labor/Mgmt.Reporting & Disclosure Act<br>[ ] 740 Railway Labor Act<br>[ ] 790 Other Labor Litigation<br>[ ] 791 Empl. Ret. Inc. Security Act<br><br>**IMMIGRATION**<br>[ ] 462 Naturalization Application<br>[ ] 463 Habeas Corpus – Alien Detainee<br>[ ] 465 Other Immigration Actions | **SOCIAL SECURITY**<br>[ ] 861 HIA (1395ff)<br>[ ] 862 Black Lung (923)<br>[ ] 863 DIWC/DIWW (405(g))<br>[ ] 864 SSID Title XVI<br>[ ] 865 RSI (405(g))<br><br>**FEDERAL TAX SUITS**<br>[ ] 870 Taxes (U.S. Plaintiff or Defendant)<br>[ ] 871 IRS—Third Party 26 USC 7609 | |

## V. ORIGIN (Place an "X" in One Box Only)

- [X] 1  Original Proceeding
- [ ] 2  Removed from State Court
- [ ] 3  Remanded from Appellate Court
- [ ] 4  Reinstated or Reopened
- [ ] 5  Transferred from another district (specify)
- [ ] 6  Multidistrict Litigation
- [ ] 7  Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 USC 1332

Brief description of cause:
Product Liability

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
- DEMAND $
- CHECK YES only if demanded in complaint:
- JURY DEMAND: [X] Yes [ ] No

## VIII. RELATED CASE(S) IF ANY

PLEASE REFER TO CIVIL L.R. 3-12 CONCERNING REQUIREMENT TO FILE "NOTICE OF RELATED CASE". MDL 1909 (Pending)

## IX. DIVISIONAL ASSIGNMENT (CIVIL L.R. 3-2)
(PLACE AND "X" IN ONE BOX ONLY)

- [X] SAN FRANCISCO/OAKLAND
- [ ] SAN JOSE

DATE
June 5, 2008

SIGNATURE OF ATTORNEY OF RECORD

## ATTACHMENT TO CIVIL COVER SHEET

**DEFENDANTS:**

BAYER HEALTHCARE PHARMACEUTICALS, INC.

BAYER HEALTHCARE LLC

BAYER SCHERING PHARMA AG

GENERAL ELECTRIC COMPANY

GE HEALTHCARE, INC.

GE HEALTHCARE AS

COVIDIEN, INC.

MALLINCKRODT, INC.

BRACCO DIAGNOSTICS, INC.